**STATE of Missouri, Plaintiff-Respondent,**

v.

**David ADMIRE, Defendant-Appellant.**

**No. KCD 26172.**

Missouri Court of Appeals,
Kansas City District.

May 7, 1973.

Richard W. Mason, St. Joseph, for defendant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

Before PRITCHARD, P. J., SWOFFORD and WASSERSTROM, JJ., and HARRY A. HALL, Special Judge.

WASSERSTROM, Judge.

Defendant appeals from a conviction for the sale of Lysergic Acid Diethylamide (LSD) and a sentence of five yers.

### I

Defendant's first allegation of error is that there was no adequate proof at the preliminary hearing of the ten tablets of LSD which he was charged with selling. The State did produce at the preliminary hearing the officer who actually made the purchase of these ten tablets from the defendant, who stated that the tablets purchased were taken to the St. Joseph police headquarters, placed in a white evidence envelope which was then sealed, tagged and placed in a locked evidence file. This officer and another then testified that the sealed envelope was later withdrawn from the file and taken to the police laboratory in Kansas City, Missouri for testing. The officers further testified that they subsequently went back to the Kansas City Police Laboratory, picked up the envelope which had been resealed by the police chemist and then returned the evidence envelope to police headquarters in St. Joseph. These officers also identified the evidence envelope as the one they brought back from the testing laboratory. The record also shows that a report of the police chemist was introduced at the preliminary hearing in lieu of the chemist appearing to testify in person.

Defendant does not deny any of the foregoing, but argues that this proof was insufficient without actually producing the ten tables themselves. The evidence envelope was produced at the preliminary hearing, but was not opened. Defendant's narrow contention is that no probable cause could be found without the opening of the envelope and an open view of the contents.

This question is not reviewable. "The magistrate is the sole judge of the competency of evidence offered in the hearing before him and the weight to be given it, and, in the absence of fraud or purely arbitrary or malicious action by the justice, his finding is conclusive and cannot be reviewed by any other court." Ex parte Cloud, 18 S.W.2d 562, 1. c. 563 (Mo. App.1929). But even if the situation here had been an actual trial in the circuit court on the merits, the evidence of the police officers outlined above would suffice. As stated in State v. McAfee, 148 Mo. 370, 50 S.W. 82 (1899), it is not necessary to introduce the corpse in order to show the fatal wounds in a murder trial. By like token, the production of the tablets were not requisite here. Brake v. State, 460 S.W.2d 639, 1. c. 641 (Mo.1970).

### II

Defendant's next point is that the evidence proved a case of entrapment. The facts with respect to the alleged entrapment all came from the testimony of Officers Hutchison and Fleck. The two other persons who participated in these events did not testify. One of those nontestifying persons was the defendant himself, who chose not to take the stand. The only other possible witness was the informer Riley, who was dead at the time of trial.

The events leading to defendant's arrest began, according to the officers, with Hutchison and Riley going together to the East Hill Shopping Center. Fleck was

present separately to observe what transpired. Hutchison's instructions were that "He was to talk with Admire and if Admire was desirous to sell drugs, he was to purchase the drug." Hutchison testified that the defendant approached him and Riley, Riley introduced the defendant, and the three then went into a coffee shop. Hutchison asked what drugs were popular in the area, and defendant answered that LSD was the most popular. The three then went out to Riley's car where defendant stated that he was going to Kansas City that afternoon and would pick up any kind of drugs that Hutchison wanted, including orange mescaline or yellow sunshine, those being two different varieties of LSD. Thereupon, Hutchison told defendant to get him ten tablets of orange mescaline at a stated price of $3.00 a tablet. Arrangements were made for the parties to meet again at the New Orleans Lounge that afternoon in Kansas City.

Pursuant to that appointment, Hutchison and Riley did go to the New Orleans Lounge, with Fleck maintaining surveillance. Defendant arrived separately. He advised Hutchison and Riley that he had been unable to obtain orange mescaline, but that he did have ten tablets of yellow sunshine. The sale of those tablets was then consummated, with Hutchison paying defendant $30.00 in identified money.

■ Taking these facts in the light most favorable to the defendant, they are not sufficient to raise a submissible issue of entrapment. The traditional test of an illegal entrapment, and the test followed by the Missouri courts, is that the criminal intent must originate in the minds of the police officers as opposed to the criminal intent originating with the defendant himself. State v. Van Regenmorter, 465 S.W. 2d 613 (Mo.1971); State v. Stock, 463 S. W.2d 889, 1. c. 892 (Mo.1971); State v. Davis, 450 S.W.2d 168, 1. c. 171 (Mo.1970). In the Davis case the Supreme Court stated the rule as follows:

"Entrapment as a matter of law is not established where there is any substantial evidence from which it may be inferred that the intention to commit the crime originated in the mind of the accused, 22 C.J.S. Criminal Law § 45(2), p. 141, or, as stated in United States v. Haden, 7 Cir., 397 F.2d, 460, 466, ' * * * unless it is patently clear from the undisputed evidence that government agents originated the criminal design and implanted in the mind of an innocent person the disposition to commit the crime.' "

The most recent pronouncement on the subject is United States v. Russell, —— U. S. ——, 93 S.Ct. 1637, 36 L.Ed.2d 366, decided April 24, 1973, where the majority opinion holds that "It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play."

■ The initial question to be answered, in considering the entrapment argument, is whether there is any substantial evidence in the case from which the jury could find that some one or more government agents "implanted the criminal design in the mind of the defendant." Unless there was evidence of that character, the issue never was injected into the case and the State was never called upon to disprove entrapment. See the comprehensive treatment of this matter in State v. Weinzerl, Mo.App., 495 S.W.2d 137, being decided contemporaneously herewith. There was no substantial evidence to show that any government agent originated the criminal design in this case. Therefore, no instruction on entrapment was necessary or proper. Submission of this issue was an error, but error in defendant's favor, of which he cannot complain.

### III

■ Defendant's final point is the contention that the instructions failed to cover all the elements of the offense in that they

did not require the jury to find that Lysergic Acid Diethylamide is a drug "designated by the Division of Health to be a hallucinogenic". This complaint has no merit. The State's Exhibit 3 shows without objection or dispute that Lysergic Acid Diethylamide was officially listed by the Division of Health as a hallucinogenic drug. As held in State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198, 1. c. 206 (banc 1954):

> "Numerous cases hold it is not reversible error for an instruction to assume the truth of a fact which is established by undisputed evidence."

Similarly so holding in State v. Brletic, 283 S.W.2d 568, 1. c. 573 (Mo.1955).

The judgment is affirmed.

All concur.